Gerald D. PETERSON, Petitioner,

v.

STATE OF MISSOURI, Respondent,
(three cases).

Civ. A. Nos. 20209–2, 1649, 1664.

United States District Court,
W. D. Missouri,
Western and St. Joseph Divisions.

Feb. 26, 1973.

Bruce C. Houdek, Federal Public Defender, Ronald M. Sokol, Asst. Federal Public Defender, Kansas City, Mo., for petitioner.

John C. Danforth, Atty. Gen. of Mo., Richard Paden, Asst. Atty. Gen., for respondent.

## MEMORANDUM AND ORDER

COLLINSON, District Judge.

These three actions are brought as petitions in the nature of writ of error coram nobis pursuant to the All Writs Statute, 28 U.S.C. § 1651, and petitions for habeas corpus. The actions were consolidated for the purposes of discovery and hearing. An evidentiary hearing was held herein on September 27, 1972. Both parties have now filed their proposed findings of fact and conclusions of law.

The respondent, the State of Missouri, has also filed a motion to dismiss for lack of jurisdiction. Petitioner has not responded to this motion.

## I.

In Civil Action No. 20209–2, petitioner has labeled his cause as a "Petition for Writ of Error Coram Nobis and Petition for Writ of Habeas Corpus"; in Civil Action No. 1649, the heading is "Petition for Writ of Error Coram Nobis"; and in Civil Action No. 1664, the cause is designated as a "Petition for Writ of Error Coram Nobis."

The gist of the State's motion to dismiss is that coram nobis jurisdiction under the All Writs Statute does not lie in this Court to attack a state criminal conviction; and that habeas corpus jurisdiction is lacking because petitioner is not in custody, but has in fact fully served, the sentences under attack here. Therefore, the State contends, it is not a proper party to this action; and petitioner's remedy is by way of a motion to vacate under 28 U.S.C. § 2255 (since Peterson is presently in federal custody), as aided by 28 U.S.C. § 1651.

In Case No. 20209–2, Peterson states that he was convicted upon his plea of guilty to the charge of auto theft, and on January 8, 1954, he was sentenced to a term of three years in the Circuit Court of Buchanan County, which he fully served.

On January 27, 1970, Peterson filed a petition for writ of error coram nobis and habeas corpus in the Buchanan County Circuit Court, pursuant to Missouri Supreme Court Rule 27.26, attacking the validity of the 1954 conviction. Counsel was appointed for Peterson, and a hearing was set for October 26, 1970. At the conclusion of the hearing, the motion was denied. Peterson, being in federal custody, was not present at the hearing.

An appeal was taken, and on February 22, 1972, the Missouri Supreme Court affirmed in a per curiam decision. Peterson v. State (Mo.Sup.) 476 S.W.2d 608 (1972). The court held, *inter alia,* that post-conviction relief under Rule 27.26, V.A.M.R. was not available for the reason that Peterson was not in custody under the sentence which he challenged; and since he was in federal custody, even if the sentence had not been served, he could not attack it under Rule 27.26. The Supreme Court of Missouri stated at 610:

> In State v. Stodulski, Mo., 298 S.W.2d 420, this court held that a motion by a defendant in which he seeks relief from what he asserts was an invalid sentence is not to be determined by the name given to it, but rather upon the facts alleged and the relief sought, and that "a writ of error coram nobis is available to attack a judgment of conviction, even after the sentence thereunder has been served." The trial court treated the motion in this case as not being made pursuant to Rule 27.26, and we shall treat it as an

application for writ of error coram nobis.

The court then considered the merits of Peterson's contentions, and denied the petition. Since the same issues are raised in this action that were determined in the State courts, there is no dispute that state remedies have been exhausted.

In addition, Peterson contends that he suffers present adverse or collateral effects from this allegedly invalid conviction in that it was used as a basis to enhance his punishment in subsequent federal convictions and to impeach his credibility in the trials of those cases.

In Case No. 1649, Peterson states that he was convicted upon his plea of guilty to a charge of auto theft, and was sentenced to a term of three years on October 11, 1963, in the Circuit Court of Nodaway County. That sentence has been fully served.

On January 11, 1971, petitioner filed a petition for writ of habeas corpus and a motion to vacate pursuant to Rule 27.-26 in Nodaway County Circuit Court. The petition was treated as one seeking relief in the nature of writ of error coram nobis. A hearing was set for June 7, 1971. Upon petitioner's failure to appear (due to his confinement in the United States Penitentiary at Leavenworth, Kansas), the petition was dismissed for want of prosecution.

Peterson contends that he was not aware that his petition had been dismissed until the time to appeal had elapsed. He did on July 22, 1971, within the time to appeal, petition the Supreme Court of Missouri for a writ of mandamus compelling the trial court to appoint counsel for him and to hold an evidentiary hearing on the allegations of his petition after compelling his appearance for such hearing. The petition for mandamus was denied without discussion. Thereafter, Peterson sought a special order to appeal out of time pursuant to Missouri Supreme Court Rule 28.07. This, too, was denied.

Respondent contends that Peterson is not entitled to relief in this action for the reason that he has failed to exhaust state remedies, and, in fact, deliberately by-passed such remedies.

The exhaustion of state remedies requirement is merely an accommodation of the federal system designed to give the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963). Petitioners are not required to file repetitious applications in state courts. See Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed. 2d 418 (1971). Under the factual circumstances of this case, we conclude that Peterson has not deliberately by-passed state remedies, but that he has exhausted his available state remedies for the purposes of this proceeding.

Peterson contends that he suffers present adverse effects from this allegedly invalid state conviction in that it was used to enhance subsequent federal sentences which he is now serving; and that it affects his eligibility for parole consideration, minimum custody, job and work assignments, as well as the conditions of his confinement and the treatment accorded him.

In Case No. 1664, Peterson states that he was convicted by jury in the Circuit Court of Buchanan County of the charge of burglary, second degree as a second offender in 1956. His conviction was affirmed on appeal. State v. Peterson, (Mo.Sup.) 305 S.W.2d 695 (1957). He was sentenced to a term of 10 years, which he has fully served.

■ On March 12, 1971, Peterson filed a petition for writ of habeas corpus and a motion to vacate judgment and sentence pursuant to Rule 27.26 in the Circuit Court of Buchanan County. Counsel was appointed to represent him. However, on June 10, 1971, the trial court denied the petition and motion, without hearing, for lack of jurisdiction. Peterson then filed a petition for writ

of error coram nobis and a motion to vacate judgment and conviction in the Missouri Supreme Court. That court denied relief without opinion. Accordingly, under the authorities cited above, petitioner has exhausted his available state remedies for the purposes of these proceedings.

The present adverse effects of this allegedly invalid conviction are identical to those set out above, particularly in regard to the enhancement of his federal sentences presently being served.

■ Coram nobis is an extraordinary writ, and the jurisdiction of the court to grant relief is necessarily limited. Despite the express abolition of the writ of error coram nobis in federal civil actions, it is still available with respect to criminal convictions under the All Writs section of the Judicial Code, 28 U.S.C. § 1651. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); Grene v. United States (C.A. 5) 448 F.2d 720 (1971). However, it is available "only under circumstances compelling such action to achieve justice." United States v. Morgan, supra; Stewart v. United States (C.A. 8) 446 F.2d 42 (1971).

■ Any proceeding which is challenged by the writ is presumed to be correct and the burden rests on the challenger to show otherwise. Only where there are errors of fact of "the most fundamental kind, that is, such as to render the proceeding itself irregular and invalid," can redress be had. United States v. Cariola (C.A. 3) 323 F.2d 180, 184 (1963); Byrnes v. United States (C.A. 9) 408 F.2d 599, 602 (1969). Relief will be granted only where circumstances compel such action to achieve justice or to avoid manifest injustice.

■ In a case where the present custody of the petitioner derives from some authority other than the challenged sentence, coram nobis relief is available under the jurisdictional mantle of the All Writs Statute. Newton v. United States (S.D.Tex.) 329 F.Supp. 90, 91

(1971). Coram nobis is a step in the criminal case and is not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding. United States v. Morgan, supra, 346 U.S. at 505, 74 S.Ct. 247 (fn. 4).

In regard to coram nobis jurisdiction, the court stated in Stubenrouch v. Sheriff of St. Louis County, Clayton, Mo., (W.D.Mo.) 260 F.Supp. 910, 911 (1966):

That jurisdiction, however, extends only to provide a post conviction remedy for federal convicts not otherwise provided by Section 2255 of Title 28, United States Code, in order that the validity of sentences already served or the validity of sentences to be served may be tested in the particular federal court that imposed the particular sentence involved.

See also Grene v. United States, supra, 448 F.2d at 721; Thomas v. Cunningham (C.A. 4) 335 F.2d 67, 69 (1964); Blake v. State of Florida (C.A. 5) 395 F.2d 758 (1968); Tapia v. United States (S.D.N.Y.) 227 F.Supp. 35 (1964), aff'd per curiam (C.A. 2) 338 F.2d 416, cert. denied 380 U.S. 957, 85 S.Ct. 1096, 13 L.Ed.2d 974. In Stubenrouch v. Sheriff of St. Louis County, Clayton, Mo., supra, the court stated at 911:

The Congress has not vested this Court with coram nobis jurisdiction in connection with State convicts and we can not exercise habeas corpus jurisdiction except in connection with a convict in custody under the particular state sentence under attack.

See also Theriault v. State of Mississippi (C.A. 5) 390 F.2d 657 (1968); Booker v. State of Arkansas (C.A. 8) 380 F.2d 240 (1967).

In Carafas v. LaVallee, 391 U.S 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the Supreme Court held that federal habeas corpus jurisdiction is not terminated when a petitioner's sentence is satisfied during the time his petition is awaiting judicial review. The Court determined that a petitioner has a sub-

stantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed upon him because of the disabilities which may flow from his conviction. *Carafas, supra* at 237, 88 S.Ct. 1556. Because of such collateral consequences, the Court specifically found that the issues raised are not moot. See Murray v. Wainwright (C.A. 5) 450 F.2d 465, 468 (1971); North Carolina v. Rice, 404 U.S. 244, 247, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971).

The court in Jackson v. State of Louisiana (C.A. 5) 452 F.2d 451 (1971), held that federal habeas corpus is not available to challenge the validity of a state conviction after the sentence has been completely served unless the petitioner sustains the burden of proving that he is under some form of restraint by virtue of the conviction. It must be shown that he is presently suffering from harmful collateral consequences of the challenged conviction. "An allegation that the conviction was used in a subsequent criminal proceeding for enhancement of a sentence which petitioner is serving at the time of filing of the habeas action constitutes a sufficient collateral effect to maintain the action." *Jackson, supra* at 452. This is true even though the removal of a prior conviction will have little present effect. Holloway v. United States (C.A. 9) 393 F.2d 731, 732 (1968).

The admonition in United States v. National Dairy Products Corp. (W.D. Mo.) 313 F.Supp. 534 (1970), is meaningful here. Therein, Judge Oliver of this Court stated at 537:

> The important point of beginning, however, is recognition that neither the jurisdictional base nor the form under which postconviction relief is sought by either a state or federal prisoner is particularly important. . . . [O]ne of the commands of the 1963 Supreme Court trilogy [Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; and Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148] was to place primary focus upon the substance of a petitioner's right to postconviction relief rather than upon the form or basis of how federal postconviction jurisdiction may have been invoked.

Further, in Booker v. State of Arkansas, *supra,* 380 F.2d at 242, our controlling court stated that the trial court must construe the essence of the complaint without controlling reference to the label or title of the pleading to determine jurisdiction under any theory which might afford relief.

■ Here, petitioner has been involved in litigation concerning alleged violations of his constitutional rights in these three state convictions for over three years. He has fully exhausted whatever state remedies were available to him, or attempted to exhaust those remedies without avail. Serious collateral consequences affecting his present incarceration have been alleged by the petitioner. Under these circumstances, petitioner should be given his day in federal court on the merits of his constitutional contentions. See McDaniel v. Sheriff of Dallas County (C.A. 5) 445 F.2d 851 (1971); United States ex rel. Urbano v. Yeager (D.N.J.) 323 F.Supp. 774 (1971).

Under the facts of this case, and the authorities cited above, the respondent's motion to dismiss for lack of jurisdiction will be denied.

## II.

In Case No. 20209–2, petitioner seeks to vacate the judgment of conviction and sentence imposed upon him, upon his plea of guilty to the charge of auto theft, in the Circuit Court of Buchanan County on January 8, 1954. Peterson was sentenced to a term of three years by The Honorable Emmett J. Crouse. Petitioner was represented by retained counsel, Richard W. Mason, in connection with this charge.

In 1952, Peterson was arrested and charged with burglary and larceny in

Buchanan County. The prosecuting attorney, John Downs, dismissed the charges to allow Peterson to enter military service. Petitioner was discharged from military service in 1953 after court martial proceedings.

On December 5, 1953, Peterson was again arrested in Buchanan County and charged with auto theft. After his arraignment on December 7, 1953, Peterson was informed by the prosecuting attorney that the 1952 charges were being refiled, and that he would be prosecuted on such charges if he did not plead guilty to the auto theft charge. Peterson contends that the prosecutor informed him that he (the prosecutor) would see to it that Peterson would be sentenced to a term of 20 years if no plea of guilty was entered. The burglary and larceny charges were in fact refiled.

Mason was employed by Mattie Courtney, Peterson's mother, to represent Peterson on both charges. After Peterson entered his plea of guilty to the auto theft charge, a *nolle prosequi* was entered as to the burglary and larceny charges. No transcript of the guilty plea and sentencing proceedings was made.

In support of his petition to vacate the judgment of conviction and sentence, Peterson raises the following contentions:

1. That the conviction was obtained as a result of "threat and intimidation";

2. That he was not advised of his rights by the trial judge, nor did the trial court ascertain that the plea was made knowingly and voluntarily with a full understanding of what a guilty plea connotes and the consequences thereof;

3. That he was denied the right of allocution; and

4. That he was denied effective assistance of counsel prior to his plea and at the time of sentencing.

At the evidentiary hearing herein on September 27, 1972, Peterson testified that he was not advised of his rights, including his right to trial by jury, by his retained counsel, nor was he informed of the rights he would forfeit by entering a guilty plea. Petitioner did admit, however, that he might have known that he was entitled to a jury trial.

The trial judge, petitioner contends, did not speak to him personally at the time of the entry of the guilty plea and sentencing, except to ascertain his name. Otherwise, he conversed only with petitioner's counsel and the prosecuting attorney. He stated that the plea of guilty, which was entered for him by his attorney, came as a "surprise" to him; but he did not say anything about it. He contends that he did not know which of the charges he was pleading guilty to; the elements of the crime of auto theft; or the maximum sentence which could be imposed.

Peterson did state that he had an indication that the sentence would be between two and ten years; and that a "deal" had been worked out. He testified further that the plea of guilty had been entered in part because his mother had prevailed upon him to do so.

Mrs. Courtney testified that she had retained Mason to represent her son. She further stated that although she was in the courtroom on January 8, 1954, she did not hear petitioner enter a plea of guilty.

Mason testified that he had been licensed to practice law in 1930, and had represented many criminal defendants before Judge Crouse on guilty pleas. Mason stated that Judge Crouse's practice was not to allow an attorney to enter a plea, and that he would not accept a guilty plea from a defendant until he ascertained that the plea was voluntarily and understandingly made.

Further, Mason testified that he had three conferences with Peterson before his plea was entered. The circumstances surrounding the charge were discussed in the first two conferences. Mason stated that after Peterson learned that the 1952 charges of burgla-

ry and larceny had been refiled, he told Mason that he didn't want to go to trial.

Prior to the entry of the plea, Mason asserted, he ascertained that petitioner knew that he was entitled to a jury trial, the nature of the crime charged and the range of punishment. Mason characterized Peterson as "knowledgeable." Further, he stated that he would not have allowed Peterson to enter a plea of guilty if it was not voluntary.

Mason's recollection of Peterson's plea was that he (Mason) had not answered the questions of the trial judge in place of Peterson, but that Peterson had answered for himself. Moreover, Mason stated, he would not have represented a defendant in a guilty plea where all the defendant said was "Yes" in response to his name.

Mason admitted that he did not have a specific independent recollection of the 1954 plea, but that his recollection was general and was based on his general knowledge of the procedure of the trial judge.

John Downs, the prosecuting attorney, testified that he had refiled the 1952 charges against the petitioner, after the charge of auto theft was filed against him, in order to put pressure on Peterson to plead guilty to the charge of auto theft. Downs also admitted that he told Peterson that if he did not plead guilty to the auto theft charges, he would prosecute Peterson on all the charges pending against him.

Downs also stated that in 1954 the trial judges did not as a general practice converse at length with defendants who were entering guilty pleas, particularly in cases where there was plea-bargaining (as in this case) for the reason that the trial judges relied on the competency and integrity of counsel in such cases.

The Honorable Emmett J. Crouse, a circuit court judge for 24 years, testified that he had no distinct independent recollection of petitioner, but that his procedure as a trial judge in 1954 when accepting a plea of guilty was to identify the defendant; determine if the de-

fendant was represented by counsel; ascertain if the defendant knew what he was charged with; determine what plea was to be entered; inquire into the facts from the prosecutor; inquire as to the prosecutor's recommendation; and impose sentence.

Judge Crouse further stated that he had a very high regard for Mason as a lawyer, and that he relied on an attorney's ability (if it was good) to advise his client. As a general rule in 1954, no allocution was allowed. Judge Crouse also stated that he would not have accepted an involuntary plea of guilty.

The issues raised by the petitioner have been directly or peripherally raised in the state courts. The Missouri Supreme Court ruled the issues on their merits, finding that the plea of guilty was voluntarily and understandingly made, and that no improper intimidation or threats had been made to bring about Peterson's plea of guilty. Peterson v. State (Mo.Sup.) 476 S.W.2d 608 (1972). In regard to the latter finding the Missouri Supreme Court stated at 610:

The prosecuting attorney admitted that he told defendant that if he went to trial he would prosecute him in every pending case. This was not improper if it was the prosecutor's intention to do so. It fairly advised defendant what he was faced with, and it would have been misleading for the prosecutor not to have so advised defendant. There is no contention that the change of burglary and stealing was not justified, and the fact that defendant was faced with more than one charge cannot constitute improper "intimidation" for him to enter a plea of guilty to one of the charges.

We adopt this finding of the Missouri Supreme Court. In addition, a plea is not involuntary because it is induced by a defendant's desire to limit the possible maximum penalty. Parker v. North Carolina, 397 U.S. 790, 795, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). Moreover, a guilty plea which represents a voluntary and intelligent choice among

alternatives available to a defendant is not a compelled plea. North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). We find that Peterson's plea of guilty was not the result of threats or intimidation, but was a voluntary and intelligent choice to avoid further prosecution. See Meyer v. United States (C.A.8) 424 F.2d 1181, 1189 (1970); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

■ On the issue of the voluntariness of the guilty plea, federal standards regarding the waiver of constitutional rights are applicable. A guilty plea is in many respects tantamount to a waiver of a jury trial, a constitutional right. The classic definition of a waiver was defined in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), as "an intentional relinquishment or abandonment of a known right or privilege." This definition furnishes the controlling standards. Fay v. Noia, *supra.*

The burden of proof, that is the risk of non-persuasion, is upon the petitioner; and the burden of producing evidence to prove relinquishment is on the prosecution. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). See also Mountjoy v. Swenson (W.D.Mo.) 306 S.W.2d 379 (1969).

The petitioner's contention is complicated by the fact that no transcript of the proceedings exists. In the absence of such transcript or the notes of the court reporter, the Court must determine from the evidence adduced whether the petitioner has sustained his burden of proof of showing that he is entitled to relief.

In the proceedings in the state courts, the trial court made specific findings of fact and applied current federal standards in denying the petition. The Missouri Supreme Court on appeal held that the trial court's findings were not clearly erroneous, and were supported by the evidence. This type of review standing alone may not comply with federal standards. However, since this Court has conducted its own hearing into the matter, the findings of facts are independently based.

Peterson alleges that his guilty plea was not made voluntarily and with an understanding of the nature of the charges against him. The trial court, petitioner contends, did not observe the standards promulgated in Missouri Supreme Court Rule 25.04. Rule 25.04, which is precisely the same as Rule 11, F.R.Crim.P., provides that the trial court "shall not accept the plea [of guilty] without first determining that the plea of guilty is made voluntarily with understanding of the nature of the charge." In McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court held that defendant's guilty plea "must be set aside and the case remanded for another hearing at which he may plead anew" when the transcript of the proceedings shows that the federal trial court failed to comply with the mandate of Rule 11. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), expanded this holding to the states. However, neither *McCarthy* nor *Boykin* are to be applied retroactively. Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969); Meller v. Missouri (C.A.8) 431 F.2d 120, 124 (1970), cert. denied 400 U.S. 996, 91 S.Ct. 469, 27 L.Ed.2d 445; Crosswhite v. Swenson (C.A.8) 444 F.2d 648, 650 (1971), cert. denied 405 U.S. 1042, 92 S.Ct. 1320, 31 L.Ed.2d 584.

The record is not clear here, in the absence of a transcript, whether the trial court made an inquiry of the petitioner regarding his understanding of the charges and the consequences of his plea of guilty. It is necessary, therefore, to consider the reasoning in United States ex rel. Grays v. Rundle (C.A.3) 428 F.2d 1401 (1970), where the court stated at 1403:

Assuming that the state trial court did not conduct, at the time of accepting the guilty plea, an inquiry sufficient to establish that the plea was

knowingly and understandingly made, the totality of the circumstances in the record before the District Court . . . [including] the 1967 hearing on the post-conviction petition [will justify] findings and conclusions that the plea was "knowingly and voluntarily entered" and was not "improperly induced."

In a later case, United States ex rel. Black v. Russell (C.A.3) 435 F.2d 546 (1970), the same court stated:

It is clear from these cases that even on a silent record, if a petitioner was represented by counsel when he entered his plea of guilty, as in the case here, the presumption is that the plea was the voluntary product of an intelligent and knowing act.

Here, petitioner was represented by employed counsel, who had been licensed to practice law in the State of Missouri for 24 years at the time he represented Peterson. The record shows that Mason was a highly respected and able attorney who had handled many criminal defendants. Both the trial judge and petitioner's counsel testified that as a general practice, defendants who entered pleas of guilty were questioned as to their understanding of the nature of the charges against them and the voluntariness of their pleas. Further, Mason testified that he would not have represented a defendant who did not enter his own plea; that he had not answered the questions of the court in place of Peterson; and that the trial judge would not allow an attorney to enter a guilty plea for his client. Further, petitioner admits that he knew that he had a right to trial by jury and that it had been indicated to him that he would receive a sentence of two to ten years.

 Under the totality of circumstances, the Court finds that the petitioner's guilty plea was knowingly and voluntarily entered and was not improperly induced.

Peterson also claims that he was denied the right of effective assistance of counsel in that (1) counsel for petitioner was not given an opportunity at the time of sentencing to state facts in mitigation; and (2) that counsel did not inform Peterson of his constitutional rights prior to the entry of his plea of guilty.

 The evidence at the hearing revealed that plea-bargaining had taken place, and that the trial judge followed the prosecutor's recommendations as a practice in 1954. Peterson knew that his sentence would be between two and ten years; in fact he received a three-year sentence. Under such circumstances, if petitioner's counsel was not allowed to speak out in mitigation, such error would be harmless and would not amount to the denial of effective assistance of counsel.

Further, testimony adduced at the hearing herein indicated that Mason had three conferences with Peterson prior to the entry of the plea. Mason stated that Peterson was "knowledgeable"; that he knew he was entitled to a jury trial, the nature of charges against him and the range of punishment. Further, after learning that additional charges had been filed against him, Peterson elected to plead guilty to the charge of auto theft.

 The test to be applied in cases where an allegation of ineffective assistance of counsel is made was laid down in Cardarella v. United States (C.A.8) 375 F.2d 222, 230 (1967), cert. denied 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176:

[A] charge of inadequate representation can prevail "only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court."

See also Robinson v. United States (C.A.8) 448 F.2d 1255 (1971); Hanger v. United States (C.A.8) 428 F.2d 746 (1970); Slawek v. United States (C.A.8) 413 F.2d 957 (1969); Kress v. United States (C.A.8) 411 F.2d 16 (1969); Cross v. United States (C.A.8) 392 F.2d 360 (1968); Churder v. United States

(E.D.Mo.) 294 F.Supp. 207 (1969), aff'd (C.A.8) 417 F.2d 633. In order to assert a Sixth Amendment infirmity on this ground, the circumstances must demonstrate that which amounts to a lawyer's abdication of his ethical duty to his client. There must be such conscious conduct as to render a sham an attorney's obligations to fairly represent the defendant. Robinson v. United States, *supra*. The factual circumstances existing here fall far short of raising such a claim.

Peterson's last allegation in his attack upon this state conviction is that such conviction was invalid for the reason that he was denied the right of allocution. There is no evidence in the record that Peterson was in fact accorded an opportunity to speak before sentence was imposed.

Peterson contends that it is settled law that allocution is a critical stage of the criminal proceedings required by the Fifth and Fourteenth Amendments under their due process of law clauses. He states that the lack of allocution was not harmless error since he did not receive the minimum permissible sentence for his offense.

However, we see no need to consider this issue in light of the Supreme Court's holding in Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962):

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent."

Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455.

See also Myers v. Frye (C.A.7) 401 F.2d 18, 21 (1968); United States ex rel. Sabella v. Follette (C.A.2) 432 F.2d 572, 576 (1970); United States ex rel. Sniffen v. Follette (C.A.2) 393 F.2d 726, 727 (1968); Roberts v. United States (C.A. 5) 384 F.2d 868, 870 (1967); Grant v. Swenson (E.D.Mo.) 313 F.Supp. 1117, 1119 (1970); United States ex rel. Resseguie v. Follette (S.D.N.Y.) 297 F. Supp. 1103, 1105 (1969); Ellis v. State of New Jersey (D.N.J.) 282 F.Supp. 298, 302 (1967), aff'd (C.A.3) 388 F.2d 988.

In *Hill, supra,* the Court noted that the defendant was not affirmatively denied the opportunity to speak, that there was no suggestion that the trial judge was misinformed or uninformed as to the relevant circumstances, and that there was no claim that defendant would have in fact had anything to say. These factors are relevant here. There are no aggravating circumstances, particularly in view of the plea-bargaining which occurred, and the imposition of sentence based upon the prosecutor's recommendation in accordance with that bargain. We therefore find that if there was a denial of Peterson's right to allocution, no claim for relief arises here.

For the foregoing reasons, Peterson's motion to vacate his 1954 conviction in State court will be denied.

### III.

In Case No. 1664, petitioner seeks to vacate a judgment of conviction and sentence, imposed upon him after trial by jury in the Buchanan County Circuit Court. On June 8, 1956, Peterson was charged by information with burglary, second degree as a second offender. He was represented by retained counsel, Grace Day, found guilty by a jury, and sentenced to a term of 10 years. His conviction was affirmed on appeal. State v. Peterson (Mo.Sup.) 305 S.W.2d 695 (1957).

In support of his petition for writ of error coram nobis, Peterson contends:

1. That his conviction was tainted by the admission into evidence of his 1954 State conviction [Case No. 20209–2, supra] and his court martial for purposes of enhancement of punishment and impeachment.

2. That he was denied equal protection of law and due process by lack of counsel on appeal; and

3. That he was denied effective assistance of counsel.

At the evidentiary hearing herein, petitioner stated that Ms. Day had been retained to represent him, and that her fee was paid by giving her his car, since he had no other assets. Ms. Day represented petitioner at the preliminary hearing, having employed a court reporter to transcribe the proceedings. The transcript was not utilized by Ms. Day for impeachment purposes during the trial, even though there was a substantial change in the testimony of the State's chief witness in regard to the clothes worn by the defendant during the offense. [The preliminary hearing transcript is not available.] In addition, Peterson testified, his mother had brought to the trial certain clothes of Peterson's, at Ms. Day's direction, which were to be used for impeachment purposes, but Ms. Day failed to offer the clothing in evidence. The transcript on appeal reveals that neither the transcript of the preliminary hearing or the clothing was introduced into evidence at the trial.

Peterson stated that Ms. Day had made numerous evidentiary objections during the trial, but had failed to preserve the objections for appellate review. In addition, Ms. Day filed a motion for new trial alleging newly discovered evidence, but failed to preserve the claim by submitting an affidavit and an offer of proof of the testimony of the newly discovered witness.

Petitioner stated that he had proceeded on his appeal pro se for the reason that he could not pay counsel to represent him on appeal.

Ms. Day testified at the hearing that she had been licensed to practice law in the State of Missouri in 1950. She stated that she had had several years of experience in criminal matters prior to handling Peterson's defense in 1956, although she did not handle criminal matters exclusively.

Ms. Day stated that she had little independent recollection of the details of Peterson's trial, and particularly did not recall the preliminary hearing transcript or the clothing, although her notes of the trial did reflect that she had at one time such a transcript. Ms. Day did recall that she had interviewed all the witnesses, and that she had preserved errors in her motion for new trial.

Ms. Day further testified that she had been retained to prosecute the appeal in the case. While new financial arrangements were pending, Peterson discharged her by letter on March 19, 1957. The letter from Peterson discharging Ms. Day was admitted into evidence at the hearing.

Peterson was recalled to the stand and stated that he had requested Ms. Day to terminate her services because neither he nor his mother had money to pay her.

There is no merit to Peterson's first contention that his conviction was tainted by the admission of a prior conviction and a court martial in view of this Court's finding that the 1954 conviction was not constitutionally tainted. Part II, *supra*.

 Peterson's second contention that he was denied effective assistance of counsel is also without merit. First, most of petitioner's factual allegations are so lacking in detail and particularity as to be unreviewable; they are form without substance.

 In Robinson v. United States, *supra* 448 F.2d at 1256, the court stated:

In order to assert a Sixth Amendment infirmity on this ground, the circum-

stances must demonstrate that which amounts to a lawyer's deliberate abdication of his ethical duty to his client. There must be some conscious conduct as to render pretextual an attorney's legal obligation to fairly represent the defendant.

Petitioner in applying hindsight to the trial tactics of trial counsel raised no substantial issue. Trial counsel's strategy will vary even among the most skilled lawyers. When that judgment exercised turns out to be wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel. Mitchell v. Stephens (C.A.8) 353 F.2d 129, 145 (1965), cert. denied 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042; Robinson v. United States, *supra*. The representation of trial counsel in this case was well above the standard sometimes enunciated of a trial that is a sham or mockery of justice, shocking to the conscience of the court. Cardarella v. United States, *supra*; Slawek v. United States, *supra*; Kress v. United States, *supra*; Cross v. United States, *supra*; Churder v. United States, *supra*.

It is also clear that the representation provided by Ms. Day satisfied the standard earlier articulated in Taylor v. United States (C.A.8) 282 F.2d 16, 20 (1960):

> The Sixth Amendment does not require for its satisfaction that the actions of counsel result in a favorable outcome. Rather, its requirement is met whenever the accused is supplied counsel who exercises that judgment which might be expected of one trained in the law and committed to the diligent application of its principles.

Petitioner here "freely equates lack of success in his criminal defense with counsel incompetency, and illogically and irrationally blames his predicament, which is primarily of his own doing, upon the inability of counsel to extricate him." Slawek v. United States, *supra* 413 F.2d at 958. The factual circumstances here fall far short of raising a Sixth Amendment claim of ineffective assistance of counsel.

Peterson's final contention in regard to vacating his 1956 State conviction is that he was denied due process of law and equal protection by lack of counsel on appeal.

Prior to March 1, 1964, Missouri had no rule requiring appointment of appellate counsel for indigent defendants. In Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the Supreme Court held that an indigent defendant was entitled to counsel on appeal. This holding was expanded in Swenson v. Bosler, 386 U.S. 258, at 260, 87 S.Ct. 996, at 997, 18 L.Ed.2d 33 (1967):

> But even if such request [for the appointment of appellate counsel] had not been made, we do not think its absence would amount to a waiver of respondent's rights. It is now settled "that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend upon a request." Carnley v. Cochran, 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed.2d 70. When a defendant whose indigency and desire to appeal are manifest does not have the services of his trial counsel on appeal it simply cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right to the appointment of appellate counsel.

*Douglas, supra* and *Bosler, supra* have been held to be retroactive. See Swenson v. Donnell (C.A.8) 382 F.2d 248 (1967).

In Caffey v. Swenson (W.D.Mo.) 298 F.Supp. 994 (1969), the trial court had refused to appoint counsel on appeal for the defendant. In a habeas corpus action in this Court, respondent contended that petitioner had waived his right to counsel on appeal. Chief Judge Becker held at 998 that the question of waiver is irrelevant where the right was not in existence, or known to exist, at the time

of petitioner's direct appeal. In Johnson v. Zerbst, *supra,* the definition of waiver was said to be "an intentional relinquishment or abandonment of a known right or privilege." See Fay v. Noia, *supra.* It was undisputed that at the time of Caffey's appeal, no right to counsel on appeal was known or recognized. See also Spaulding v. Taylor (D. Kan.) 234 F.Supp. 747 (1964).

In the case at bar, petitioner was represented at trial by retained counsel. Trial counsel filed a notice of appeal on December 5, 1956, the day of sentencing. No application to proceed in forma pauperis or request for the appointment of appellate counsel was made to the trial court or appellate court. Trial counsel continued to act for Peterson in the prosecution of his appeal until dismissed by Peterson on March 19, 1957. Peterson did not subsequently request the appointment of counsel, nor is there evidence in the record that he requested to proceed on appeal in forma pauperis at any time. It is undisputed that petitioner was not represented by counsel on appeal.

■ Although a request for the appointment of appellate counsel is not a prerequisite to securing the right, two manifestations are necessary—that of the desire to appeal and that of indigency. Peterson's notice of appeal manifested his desire to appeal. The remaining question is whether Peterson manifested his indigency in any way so as to entitle him to court-appointed counsel on appeal. See Harris v. Beto (C.A.5) 399 F.2d 679 (1968); Fairris v. Beto (C.A. 5) 446 F.2d 1290 (1971); Johnson v. Wainwright (C.A.5) 456 F.2d 1200 (1972); United States ex rel. Edwards v. Follette (S.D.N.Y.) 281 F.Supp. 632 (1968), aff'd (C.A.2) 399 F.2d 298; United States ex rel. Williams v. Warden of Sing Sing Prison (S.D.N.Y.) 274 F.Supp. 597 (1967), aff'd 389 F.2d 1002.

There is no evidence in the record of petitioner's indigency at the time of his appeal, except for his belated claim that he was in fact a pauper at such time at the evidentiary hearing herein. The transcript of the trial plainly shows that the appeal was not taken in forma pauperis. There is no application to proceed in forma pauperis. Peterson was represented by retained counsel until March 19, 1957. While his appeal was pending, he discharged his attorney. He now contends that the discharge was for the reason that he could not pay counsel; however, there is no evidence in the record of indigency except petitioner's self-serving statements made at the hearing herein, some 16 years after the fact.

■ Petitioner's indigency was not manifest at the time of his appeal. Therefore, Peterson's lack of counsel on appeal was not a deprivation by the State of a right guaranteed by the Sixth and Fourteenth Amendments.

Therefore, petitioner's motion to vacate the judgment and sentence of his 1956 State conviction will be denied.

### IV.

In Case No. 1649, Peterson seeks to set aside the judgment of conviction and sentence entered upon his plea of guilty to a charge of stealing an automobile, second offender, in the Circuit Court of Nodaway County on October 11, 1963. He was sentenced to a term of three years by The Honorable Ray Weightman. Peterson was represented by retained counsel Richard W. Mason.

In support of his petition to vacate judgment of conviction and sentence, Peterson states the following grounds:

1. That his plea of guilty was involuntary and made without an understanding of the nature of the charge and its consequences;

2. That his sentence was tainted by the trial court's consideration of petitioner's 1954 and 1956 convictions; and

3. That he was denied effective assistance of counsel.

At the evidentiary hearing herein, petitioner testified that he had two charges pending against him at this

time—one in Gentry County, which was filed first, and one in Nodaway County. Peterson's mother retained Mason to represent him, without petitioner's approval since Peterson believed that Mason only wanted to plead him guilty. Peterson testified that he told his mother and brother of his dissatisfaction with Mason, but further stated that he did not express his sentiments to Mason, nor discharge him, nor tell him not to represent him.

Peterson stated that he discussed the charges pending against him with Mason, and decided to plead guilty because he had no money to employ other counsel and because there was a threat of numerous other charges being filed against him.

At the same time that Mason represented petitioner, he also represented Henry Wilfong and Robert Hackney who were charged with burglary. Peterson testified that the automobile that he was charged with stealing was taken during that burglary. Wilfong and Hackney were arrested while in petitioner's car. The charges against Wilfong and Hackney were dismissed after Peterson's conviction, as was the Gentry County charge and all other charges pending against Peterson.

Peterson further testified that at the time he entered his plea of guilty, he did not know what would happen to the other charges pending against him, nor did he know what all the charges pending against him were. He stated that Judge Weightman did not personally address him when he accepted his plea. Peterson further claims that he did not enter his plea "to take the rap" for Wilfong and Hackney.

Peterson's mother and brother testified that they knew Peterson was dissatisfied with Mason, but neither of them spoke to Mason because they had no money to employ other counsel.

Henry Wilfong testified that he was arrested in 1963 while driving Peterson's car, and employed Mason to defend him. He stated that he and Hackney were charged with burglary, and that Peterson was not a co-defendant. Wilfong stated that he knew of no relationship between his arrest and Peterson's arrest, or between Peterson's guilty plea and his release. He stated that he had been informed by the sheriff that he had been released because of insufficient evidence.

Mason testified that he had represented Hackney and Wilfong at the same time as Peterson. However, he stated, no deal had been worked out in relation to Peterson's guilty plea and the subsequent release of the two others. Wilfong and Hackney's case was dismissed for lack of evidence.

Mason had little independent recollection of the details of Peterson's plea. He testified that he had been licensed to practice law in Missouri for 33 years at the time he represented Peterson in this action; that he had appeared before Judge Weightman many times in criminal proceedings; that Judge Weightman's practice in accepting pleas was very technical, and required defendants to be fully aware of the elements of the offense charged and the consequences of a plea; that Judge Weightman required defendants to enter their own pleas; and that he inquired into the voluntariness of a plea.

Raymond Eckles, prosecuting attorney at the time of Peterson's plea (and still the prosecutor of Nodaway County), stated that he had no independent recollection of the entry of the plea itself, but that Judge Weightman's practice and procedure was to obtain a copy of the statute under which a defendant had been charged and to read it to the defendant; to ask the defendant if he knew what the charges against him were; and to ascertain if the defendant was aware of his rights and the consequences of his plea. Eckles also testified that he recalled a discussion about filing another charge against Peterson, Wilfong and Hackney, but could not recall if such a charge had been filed.

Peterson's claim that his sentencing was tainted by the trial court's consideration of his prior convictions in 1954 and 1956 is without merit, since we have determined that the prior convictions were not constitutionally infirm. Parts II and III, *supra.*

■ Peterson's claim that his plea was involuntary in that it was coerced by the threat of additional charges and in that it was made without an understanding of the charges or the consequences thereof is without merit under the authorities cited in Part II of this memorandum.

Again, Peterson's allegation is complicated by the fact that no transcript of the proceedings or court reporter's notes are in existence or available. It is necessary, therefore, to examine the "totality of the circumstances in the record before the District Court," United States ex rel. Grays v. Rundle, *supra* 428 F.2d at 1403, with the presumption that on a silent record a petitioner represented by counsel when he entered his plea of guilty is presumed to have entered a knowing and intelligent plea, United States ex rel. Black v. Rundle, *supra.*

Petitioner was represented by retained counsel who, at that time, had 33 years of experience in the practice of law. He was highly respected and had broad experience in criminal matters. Both the prosecuting attorney and petitioner's counsel testified that the trial judge was meticulous in accepting guilty pleas, inquiring of a defendant as to his understanding of the nature of the charge against him and the consequences of his plea. Petitioner was "knowledgeable" about his rights, having been involved in the judicial process several times previously, and did confer with his counsel in regard to the offense.

Under the totality of circumstances, the Court finds that the plea of guilty was the product of a knowing and intelligent act.

■■ Moreover, petitioner's claim that he was coerced into pleading guilty by the threat of additional charges being filed against him does not invalidate his plea. A plea is not involuntary because it is induced by a defendant's desire to limit the maximum punishment, Parker v. North Carolina, *supra*; or where it represents a voluntary and intelligent choice among alternatives available to him, North Carolina v. Alford, *supra.*

Petitioner's last ground for relief is that he was denied effective assistance of counsel. In support of this claim, Peterson contends that he was charged with the theft of an automobile stolen during a burglary for which Wilfong and Hackney were charged. Wilfong and Hackney were arrested in petitioner's automobile with the proceeds of the burglary, and detained in Nodaway County. Peterson was arrested separately and detained in Gentry County. All three men retained Richard Mason as counsel. Mason did not inform Peterson that he was also representing Wilfong and Hackney. After Peterson's conviction for auto theft, the charges against Wilfong and Hackney were dismissed. Thus, petitioner contends:

> There were apparently no witnesses to the burglary. Thus, a claim by Wilfong and Hackney that they merely borrowed petitioner's car without knowledge of its contents could not be challenged without his testimony. Just as clearly, a claim to have borrowed the stolen car from Wilfong and Hackney would have provided petitioner with a defense difficult to disprove without their testimony.

■ The rule established in the leading case of Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), is that a defendant is entitled to "untrammeled and unimpaired" assistance of counsel for his defense. He is entitled to separate counsel where the added burden of representing a co-defendant would impair counsel's effectiveness. See also Government of the Virgin Islands v. John (C.A.3) 447 F.2d 69

(1971); Holland v. Henderson (C.A.5) 460 F.2d 978 (1972); United States v. Olsen (C.A.2) 453 F.2d 612 (1972). However, there is no *per se* rule that counsel may not represent more than one defendant in an action, if there is no conflict in the interests of the co-defendants represented. United States v. Youpee (C.A.9) 419 F.2d 1340 (1969); Curry v. Burke (C.A.7) 404 F.2d 65 (1968); Fryar v. United States (C.A.10) 404 F.2d 1071 (1968).

■■■ The burden of proof is on the defendant to establish by clear and convincing evidence that a conflict existed. Curry v. Burke, *supra* 404 F.2d at 67. Each case depends on its particular facts and circumstances, including the acts, background and experience of the accused. Larry Buffalo Chief v. State of South Dakota (C.A.8) 425 F.2d 271 (1970). The claim is not to be decided on the basis of speculation, but by a considered determination of whether a conflict of interest in fact existed Carlson v. Nelson (C.A.9) 443 F.2d 21 (1971). The claim cannot be upheld absent evidence of actual conflict of interest or evidence pointing to a substantial possibility of a conflict of interest between the co-defendants. United States v. Williams (C.A.8) 429 F.2d 158 (1970).

We note primarily that Peterson was not a co-defendant in the charge of burglary pending against Wilfong and Hackney, but was charged separately with the offense of auto theft. There is no admonition that counsel cannot represent defendants in separate trials on separate offenses.

Further, Peterson's allegations amount to a charge that he was "sold out" by his attorney and forced "to take the rap" for Wilfong and Hackney. It is with particular ill grace that Peterson comes forth with this attack, based on innuendo and speculation of the lowest kind, on the integrity of his retained counsel. There is not a shred of evidence in the record that a conflict of interest existed. We have only the bald, conclusory and self-serving accusations of the petitioner himself.

The evidence at the hearing shows that Mason denied that a deal had been worked out for the benefit of Wilfong and Hackney upon petitioner's conviction. Wilfong testified that he was not aware of any relationship between Peterson's plea of guilty and sentence and his subsequent release. And petitioner himself testified that he had not "taken the rap" for Wilfong and Hackney.

■■■ There was no conflict of interests as described in the authorities above. Therefore, we find no basis for petitioner's claim of a violation of his Sixth Amendment right to effective assistance of counsel.

For the foregoing reasons, Peterson's collateral attack upon his 1963 State conviction will be denied.

### V.

In the light of the discussion above, the Court finds that petitioner is not entitled to relief in Civil Action Nos. 20209-2, 1649 and 1664. Accordingly, it is

Ordered that defendant's motion to dismiss for lack of jurisdiction be denied; and

Ordered that petitioner's motions to vacate judgments of conviction and sentences in Civil Action Nos. 20209-2, 1649 and 1664 be, and they hereby are, denied.