348 F.Supp. 563 (1972)
Carl Houston ROBERTS and Roy Malcolm Roberts, Petitioners,
v.
UNITED STATES of America, Respondent.
No. 72 C 116(2).
United States District Court, E. D. Missouri, E. D.
September 11, 1972.
*564 Carl Houston Roberts and Roy Malcolm Roberts, pro se.
Daniel Bartlett, Jr., U. S. Atty., J. Patrick Glynn, Asst. U. S. Atty., St. Louis, Mo., for respondent.

MEMORANDUM AND ORDER
REGAN, District Judge
Roy Malcolm Roberts and Carl Houston Roberts, father and son, have jointly moved under Section 2255, 28 U.S.C., to vacate their convictions and sentences.
Petitioners, together with Jackie Leach and Robert Farris, were jointly charged and convicted under a two-count indictment, each count charging the assault on December 30, 1968 of an officer of the Bureau of Narcotics with a dangerous weapon in violation of Section 111, 18 U.S.C. The convictions as to all defendants were affirmed in United States v. Leach, 8 Cir., 429 F.2d 956, cert. den. 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151.
The present motion sets forth three grounds for the relief sought: (1) denial of petitioners' Sixth Amendment right to assistance of counsel; (2) double jeopardy in violation of the Fifth Amendment; and (3) alleged insufficiency of the evidence as to petitioner Carl Houston Roberts by reason of the asserted failure of the Government to prove that a dangerous weapon was used by him in the assaults. Of these in order.
1. The Sixth Amendment claim is to the effect that a conflict of interest was created by the action of the Court in "forcing" both petitioners to be defended by the same counsel.
"It has been firmly established that joint representation of codefendants is not per se violative of the Sixth Amendment. (Citing cases). Expressed another way, no reversible error is committed by the district court by assigning a single attorney to represent two or more codefendants in a pending criminal action, absent evidence of an actual conflict of interest or evidence pointing to a substantial possibility of conflict of interest between the codefendants." United States v. Williams, 8 Cir., 429 F.2d 158, 160-161.
The record conclusively establishes that insofar as the first trial was concerned, the contention that the Court "forced" either petitioner to be defended by the same counsel is completely frivolous. Petitioners voluntarily retained Raymond Bruntrager, a lawyer skilled in the practice of criminal law, to represent both father and son. Mr. Bruntrager filed various motions on behalf of his clients, including one for the continuance of the case from its original setting of January 27, 1969. The Court granted a continuance to February 10, 1969, and on that date the trial commenced. On the third day of trial, with both petitioners represented by Bruntrager, and the co-defendants Leach and Farris by appointed counsel Louis Gilden, a mistrial was granted on motions of all defendants.
There was not the slightest hint prior to the start of the second trial of any dissatisfaction on the part of either petitioner with respect to the services rendered by Bruntrager. This is not to say that if a conflict of interest actually existed (and we discern none), the fact that counsel was retained rather than appointed would not bar a right to relief.
We are at a loss to understand how or why, in the circumstances of this case, there either was or could be a conflict of interest between Roy and Carl. Their versions of the occurrence did not differ in the slightest. Their interests, rather than being in conflict, were in all respects identical. So far as Roy is concerned, petitioners do not even make a claim that he could possibly be adversely affected by any evidence or theory of defense which would exculpate Carl. It is not surprising that even now, and without counsel, petitioners are acting jointly. This lack of conflict in interest as affects Roy is unquestionably true not only as to the first trial but also as to the second trial at which Roy's retained counsel was "forced" to continue *565 his representation of Carl when a continuance was denied.
The only so-called "conflict of interest" about which Roy now complains, namely, that by reason of the dual representation he was "forced to accept a mistrial" in the first trial, is in truth not a conflict at all. Rather, it pertains to the tactical judgment of his attorney. Roy's theory appears to be that since the matter which precipitated the motion for mistrial allegedly affected Carl only, Bruntrager should have limited his motion to Carl. What he fails to note is that Bruntrager's decision to request the mistrial as to both his clients was in no way mandated by any duty he owed to Carl. Over and beyond the foregoing, petitioners misconstrue the basis upon which Bruntrager, acting in good faith, determined that it would be in the best interests of both his clients to move for a mistrial. Although what precipitated the incident was a question directed to Carl, the mistrial was requested on the basis of a comment made by the Court which Bruntrager believed implied that he had concealed certain information from the jury and therefore reflected upon his integrity. In this context, it mattered not whether counsel's conduct pertained to Carl or Roy, inasmuch as counsel was employed by and represented both Roy and Carl, so that both clients were equally affected.[1]
As for Carl, his complaint as to the alleged "conflict of interest" is based upon the contention that the Court should not have "forced" him to accept Bruntrager's services at the second trial which commenced on Monday, March 24, 1969. Up to the morning of that date, no intimation had been given to the Court that Carl wished to change his attorney. As the Court of Appeals stated in holding that this Court had not abused its discretion in denying Carl a continuance:
"On the day of the trial counsel for Carl Roberts requested a continuance, stating that he had been informed the Saturday before that Carl had obtained other counsel and did not wish him to represent him; however, the other attorney was not present at the trial. Carl's attorney of record also asked permission to withdraw in view of his client's dissatisfaction with him. The court denied both motions. It is contended on this appeal that the court abused its discretion in failing to grant defendant's motion for continuance `in order to permit him to retain new counsel.' We do not agree. Counsel had represented defendant for almost three months with no indication that defendant was dissatisfied with his services until the Saturday before the trial was to commence the following Monday. The court was not advised until the morning of the trial. The case had previously been tried almost to conclusion and had ended in a mistrial. Defendant's counsel was thoroughly familiar with the case and the court observed that he was well known in the community as a lawyer with great proficiency in the field of defending people charged with crime. Also, he represented Carl's father, Roy Roberts, who had apparently found no fault with his representation."
By way of amplification: On the Saturday preceding the trial date, Bruntrager conferred with Carl, who was confined at the City Jail for want of bond, and was told (for the first time) that "(Carl) had no confidence in (Bruntrager's) legal ability or apparently any other ability at that time and that he desired (Bruntrager) to withdraw." Not a word was then said implying that the lack of confidence was due to any alleged conflict of interest.
Initially, we note that if Carl actually retained an attorney from Nashville, Tennessee, as he informed the Court on the March 24 trial date, there is not the slightest corroboration in the record of this assertion. The actual taking of testimony at the second trial did not commence until the afternoon of March 25, *566 only the jury having been selected the first day. Yet no word whatever was received from the Nashville lawyer, either by telephone, telegram or letter, to the effect that he was in the case, representing Carl. And in fact, to this day the Court has never received any communication whatsoever from the Nashville attorney. We also note that the appeal in this case was handled on behalf of both petitioners by Bruntrager, apparently without objection by Carl.
Having unsuccessfully urged on direct appeal that the Court should have granted him a continuance because he was "forced" to allow his retained counsel Bruntrager to continue to represent him, Carl now, three years later and for the first time, asserts that Bruntrager's "forced" representation of both Carl and Roy created an "incurable conflict of interest."
The alleged "incurable conflict of interest" is based on the allegation that in February, 1969, shortly after the aborted first trial, Roy allegedly informed Bruntrager, in Carl's presence, of two matters which, because of Bruntrager's "undivided loyalty to Roy," he was unable to effectively present to the jury. Bruntrager is alleged to have told petitioners after hearing this newly revealed evidence that such information should not be volunteered by Roy and that he should say nothing about it unless questioned on the witness stand. The evidence was to the effect (1) that the derringer pistol, which both Carl and Roy swore Carl never held or pointed at the agents, was unloaded at the time of the assault, but was thereafter loaded by Roy in the few minutes which elapsed from the time defendants ejected the agents and the time they returned to the premises with other officers, and (2) that contrary to the Government's evidence that Carl threw a chair at one of the agents, the chair was in fact thrown by Roy.
We do not see how this testimony, if given by Roy, could have aided the defense of Carl. The fact is that in his testimony Roy specifically corroborated Carl's denial that he had the derringer in his hand, as well as Carl's denial that he had thrown a chair at an agent. The thrust of the Government's case was that all defendants were acting jointly, either as principals or as aiders and abetters. There is no dispute in the evidence that the revolver with which Roy assaulted the agents was loaded nor that the guns which Leach and Farris pointed at the agents were loaded, so that once the jury disbelieved the defendants' testimony that they were acting in self-defense in assaulting the agents, there could not be the slightest doubt as to the guilt of all defendants either as principals or as aiders or abetters.
Under the evidence, irrespective of whether the chair was thrown by Roy or Carl and whether or not the derringer, which Carl denied he even held, was or was not loaded when he pointed it at the agents, Carl was equally guilty with the other defendants as an aider and abetter. Assuming the verity of the making of the alleged statements by Roy and Bruntrager, it is apparent that Bruntrager's decision respecting the desirability of presenting such evidence was simply one of trial tactics.[2]
*567 The case of Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, relied on by petitioners, is wholly inapposite. There, the Court was apprised before the trial commenced of the inconsistency in the defenses of two defendants, with the result that counsel was unable to adequately present evidence which would absolve one client, because to do so would have affected his ability to effectively represent the other.
We find and hold under the record of this case that there was neither an actual conflict in interest nor the substantial possibility of such conflict in interest between Roy and Carl as would reflect upon the ability of Bruntrager to effectively and adequately jointly represent petitioners.
2. Petitioners' claim of double jeopardy is based on the granting of the mistrial, on motion of petitioners, the contention being that under the rationale of United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543, the reprosecution was violative of the double jeopardy provision of the Fifth Amendment. In Jorn, the court declared a mistrial on its own motion under circumstances which the Supreme Court held constituted an abuse of discretion.
In United States v. Tateo, 377 U.S. 463, 467, 84 S.Ct. 1587, 1590, 12 L.Ed.2d 448, the principle here applicable is stated therein, "If Tateo had requested a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the Government would not have been barred from retrying him." Here, petitioners' counsel, acting on their behalf, requested a mistrial on the basis of a comment by the judge, and are therefore precluded from insisting that the Government was barred from retrying them.
Petitioners cite United States v. Walden, 4 Cir., 448 F.2d 925 in support of this contention. The facts of Walden are clearly distinguishable. In that case, the trial court expressly suggested to counsel that a mistrial be considered by them, and for practical purposes the court invited the mistrial. Some of the defendants, although reluctantly, acceded to the judge's invitation and moved for a mistrial. As to the other defendants, the judge acted sua sponte. Holding that the circumstances in each case must be examined to determine whether a motion for mistrial was voluntarily requested, Walden concluded that "despite the ceremonial motions" made by some of the defendants "the suggestion to counsel to make the motion, coupled with refusal to adequately consider other possible cures and the nature of the relatively trivial incident that triggered the abortion, destroyed any real option on the part of the defendants," so that the motion was, in effect, not voluntary.
Walden is not our case. Here, the motion for mistrial was neither suggested nor invited by the Court, but was entirely voluntary on the part of defendants' counsel. And as Walden held, "If the abortive procedure below had been initiated by these four defendants, we would have no doubt about [the propriety of reprosecution], for it would be nonsense to allow a defendant to actively seek a mistrial and by so doing thereafter prevent any trial at all."
It is of significance that during the course of the first trial defendants had made other requests for mistrial. In the portion of the record available to us we have noted at least two earlier such requests by counsel for petitioners and at least five others by counsel for co-defendants. Acceding to petitioners' last request for a mistrial, the Court expressly took note of the previous requests, informing the jury, "Counsel has asked for a mistrial as a result of the question, and because of the many requests that have been made, I am going to grant a mistrial in this case."
It is obvious to us that each of the requests for mistrial, and particularly the one which was ultimately granted, was a matter of trial tactics which is for the judgment of counsel. Cf. Armstrong v. United States, 7 Cir., 367 F.2d 821. We are convinced that in determining to request a mistrial in addition to other relief, it was the judgment of counsel that the other relief would not be adequate for the protection of his clients. The *568 claim of double jeopardy is without merit and is denied.
3. The alleged insufficiency of the evidence to establish that Carl Roberts used a dangerous weapon in the assaults almost borders on the frivolous. Wholly aside from the agents' testimony that Carl had a loaded derringer pistol in his hand which he pointed at them, the evidence establishes beyond a reasonable doubt that with respect to the assaults by Roy and co-defendants Leach and Farris, Carl was guilty as an aider and abetter, and hence was punishable as a principal under Section 2, 18 U.S.C. Cf. United States v. Tijerina, 10 Cir., 407 F.2d 349, 355. In these circumstances it is unnecessary to determine whether the alleged insufficiency of the evidence as to Carl may properly be raised by way of collateral attack. Cf. Weaver v. United States, 8 Cir., 418 F. 2d 475. We note that on direct appeal all defendants, including Carl, conceded that each of them was guilty of one of the assaults, and in effect conceded the sufficiency of the evidence to sustain one charge of assaulting an officer with a dangerous weapon.
The motion to vacate should be and is hereby overruled as to both petitioners.
NOTES
[1] Nor would it matter whether Bruntrager may have been mistaken in his assessment of the Court's remark or its prejudicial effect upon the jury.
[2] As appears supra, Carl's theory was that he never held the derringer, whether or not it was loaded. Testimony that the gun was not loaded until afterwards could reasonably tend to weaken that defense. As for the chair, not only could Bruntrager reasonably believe, in view of the positive testimony of Carl, supported by Roy, that Carl never threw a chair, that it would be preferable to convey the impression to the jury that the entire story of the chair being thrown had been fabricated by the agents, but he could also reasonably believe that testimony by Roy at the second trial that he threw a chair at an agent would be suspect in view of the fact that nothing had been said about it in the first trial, as well as being damaging to the entire self-defense theory of petitioners. Significantly, according to his sworn affidavit in support of the motion, Carl knew, some five weeks before the second trial, all of the alleged facts upon the basis of which he now claims that a conflict existed. And Bruntrager, who is knowledgeable in this area, certainly did not believe that such evidence created a conflict of interest.