**STATE of Missouri, Plaintiff-Respondent,**

v.

**Earl Albert WEEKS,
Defendant-Appellant.**

**No. 10117.**

Missouri Court of Appeals,
Springfield District.

Feb. 1, 1977.

Motion for Rehearing or to Transfer
Denied Feb. 9, 1977.

Application to Transfer Denied
March 14, 1977.

John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Gregory K. Johnson, Springfield, for defendant-appellant.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

BILLINGS, Chief Judge.

A Greene County jury found defendant Earl Albert Weeks guilty of the first degree murder of an elderly lady store owner during the course of a robbery and fixed his punishment at life imprisonment. Defendant's motion for a new trial was denied and following allocution, sentence was imposed and judgment entered. We affirm.

A nine-inch snow blanketed the Ozarks on the early evening of Saturday, November 30, 1974, as a 1966 Ford automobile bearing Iowa license plates drove north from Springfield on Highway 13. The car was occupied by defendant Weeks, Ralph Parcel, and Joseph Teitsworth, the state's principal witness. The three men were en route to carry out their planned robbery of 81-year-old Lena Cukerbaum, proprietress of a country store located about ten miles from Springfield. A few days earlier the trio had agreed to travel to Missouri from Iowa and commit the robbery after having been informed that the store was owned by a "rich, old lady" who "didn't believe in banks" and "kept all her money in boxes."

The three men had left Muscatine, Iowa, on Friday, November 29, and after stopping in Moulton, Iowa, to purchase adhesive tape and at Fairfield, Iowa, to buy nylon stockings, both items for use in commission of the planned crime, they arrived in Springfield in the early hours of November 30. They checked into a motel and after sleeping late, eating breakfast, and shooting pool, drove to the store area to look things over. They agreed that Parcel and the defendant would enter the store and rob Mrs. Cukerbaum while Teitsworth parked nearby and served as a lookout. During this trip, Teitsworth pointed out to his companions the location of the Carl Kindred [1] residence. The men then returned to Springfield where they had supper at a local steakhouse.

Because of the adverse weather conditions, Mrs. Cukerbaum let her employee, Charles Sparkman, leave the country store about mid-afternoon Saturday. At that time there were four hundred to five hundred dollars at the store and Mrs. Cukerbaum was wearing rings, a brooch, and a watch.

After arriving in the general area of the Cukerbaum store Saturday night, the three Iowa men stopped their car and prepared for the robbery. Portions of the nylons were cut off and the tape prepared. The unwanted part of the nylons and the tape container were thrown out of the car. Teitsworth then dropped Parcel and the defendant off at the store and took up his vigil as a lookout, parking the car at a nearby churchyard so that he could see traffic along Highway 13. He and his companions were equipped with two-way radios.

Clifford White passed the store about 7:45 p. m. and saw someone in the area between the store and an outside telephone booth. As White passed the church he saw the 1966 Ford parked there and noticed the Iowa license plates. He also observed the lone occupant of the car had long hair.

---

1. Teitsworth had previously visited the Kindred home which was located near the victim's store.

Thereafter, Teitsworth saw a police patrol car driving on Highway 13 and attempted to radio Parcel and the defendant to "get out." The message was not received, but pursuant to plan Teitsworth started driving up and down the highway in the general area, waiting to pick up Parcel and the defendant.

About 10:00 p. m. Parcel and the defendant appeared at the Carl Kindred home. They told him they had run their car off the road and wanted him to take them to Springfield. When he advised the pair he could not do this because his wife was ill, they asked him to telephone for a taxicab. He did so. While they were awaiting the cab, Teitsworth drove up and Parcel and the defendant left with him. The defendant told Teitsworth all they had stolen was a handful of change. As the car left the area and headed for Iowa, Parcel and the defendant talked about the robbery. According to Teitsworth's testimony, defendant said that the "old lady" kept ripping the adhesive tape and he finally got a coat hanger and wired her hands. Defendant related that he kept asking her where the money was and she told them she had given them all she had. He said he told her, "No, I mean a lot of money." Defendant then said he threw Mrs. Cukerbaum down on the floor and "throwed a mattress over her." When Parcel asked the defendant if he thought they should call the police and "let them know there's an old lady tied up down there," the defendant replied: "I don't care if she does die. She wouldn't cooperate, anyway."

The bruised, battered, and broken body [2] of Mrs. Cukerbaum was found in the living quarters area of the store Sunday morning by a concerned neighbor and an officer. Her hands were bound behind her back with adhesive tape and wire coat hangers. Tape was around her ankles and across her mouth. Coats and a sofa cushion were piled on the body. The rooms had been ransacked and "stuff was piled just like a tornado went through it." The jewelry Mrs. Cukerbaum had been wearing Saturday afternoon was gone and the green tackle box in which she kept her money was empty, except for some checks. Near her body was a cut-off portion of nylon stocking.

Teitsworth, Parcel, and the defendant arrived back in the Muscatine, Iowa, area about eight o'clock Sunday morning and went their separate ways. Late Sunday afternoon Parcel and another man, Burton Dewitt, were arrested by an Iowa state trooper on a narcotics charge and at that time Parcel had in his possession a cut-off nylon stocking and $436 in currency. The money consisted of more than $100 in dollar bills and the remainder in larger denominations.

At a later date the three men were together and the robbery of Mrs. Cukerbaum was discussed. When Parcel mentioned that Carl Kindred was the only one who could identify "us" the defendant said "if we got picked up on it, he'd see that Carl Kindred was taken care of."

Following Teitsworth's arrest, he implicated Parcel and the defendant and they were arrested. Teitsworth showed officers the motel where the three Iowans had stayed in Springfield, the steakhouse where they ate supper, and the area where the unused portion of nylon stockings and tape cover were thrown out of the car. Both items were found.

All three men were jointly charged with murder during the course of robbery. As a result of "plea bargaining" Teitsworth agreed to testify against Parcel and the defendant. Following a severance, the trial of defendant Weeks was held.

We first consider the state's motion to dismiss this appeal. The state contends that because the defendant's motion for

---

2. The autopsy physician described the external injuries to be a cut over the right eye, lacerations of the wrists, bruises on the ankles, black eyes, and black and blue marks on the chest. Internal injuries were described as multiple compound rib fractures, torn liver, collapsed lungs, and hemorrhaging. Trauma by blunt force was opined to be the cause of the injuries. Death was due to asphyxia and time of death fixed between 2:30 and 4:30 Sunday morning.

new trial was not timely filed we have no jurisdiction to entertain the appeal.

The verdict of the jury was returned on April 5, 1975. The trial court granted the defendant an additional thirty days to file his motion, which, together with the ten days allowed by Rule 27.20(a), V.A.M.R., totaled forty days. The defendant's motion was filed May 16, 1975, forty-one days after the verdict.

 We agree that the defendant's motion for new trial was out of time and is a nullity. *State v. Richardson,* 519 S.W.2d 15 (Mo.1975); *State v. Stevens,* 529 S.W.2d 670 (Mo.App.1975). The applicable rule, 27.20(a), is cast in mandatory terms, and neither the parties nor the court can waive the requirements of the rule. *State v. Rapp,* 412 S.W.2d 120 (Mo.1967); *State v. Morse,* 526 S.W.2d 432 (Mo.App.1975). Thus, the trial court's attempt on May 15, 1975, to grant the defendant an additional five days for the filing of his motion was an exercise in futility and a nullity. *State v. Powell,* 433 S.W.2d 33 (Mo.1968); *State v. Crow,* 388 S.W.2d 817 (Mo.1965), *cert. denied,* 383 U.S. 914, 86 S.Ct. 901, 15 L.Ed.2d 668. Under the rule, the maximum length of time permissible for the filing of a motion for a new trial is 40 days after the return of the verdict. After stating the court may, on application of the defendant, extend the alloted time for an additional thirty days, the rule continues and provides the *"court shall have no power to* make *another or further extension of the time for filing said motion."* (our emphasis)

 In this case we conclude the defendant's late motion for a new trial does not preserve the claimed errors for our review. *State v. Clark,* 432 S.W.2d 279 (Mo. 1968). However, contrary to the state's position, this does not mean defendant's appeal is subject to dismissal. We are re-quired by Rule 28.02, V.A.M.R., to examine the transcript on appeal to determine the sufficiency of the information, and examine the verdict, judgment and sentence for possible error. Further, for the purpose of ascertaining whether plain error may have occurred affecting substantial rights and resulting in manifest injustice or a miscarriage of justice, we are authorized to exercise discretion in our review. Rule 27.20(c); *State v. Watson,* 511 S.W.2d 890 (Mo.App. 1974).

 We have laboriously reviewed the six volumes of transcript, consisting of 1558 pages, the various exhibits filed herein, and considered the thirteen points contained in defendant's 68-page (legal size) brief.[3] We have found nothing that resulted, in our opinion, in manifest injustice or a miscarriage of justice. On the contrary, we conclude the defendant had a fair trial and that his guilt was established by overwhelming evidence. The plain error doctrine is therefore not applicable. *State v. Caffey,* 457 S.W.2d 657 (Mo.1970); *State v. White,* 529 S.W.2d 22 (Mo.App.1975).

The information was sufficient to charge the defendant under the felony murder provision of § 559.010, RSMo 1969.[4] The verdict was responsive and in proper form. The punishment assessed was within the statutory limit. Defendant was afforded allocution. Sentence was imposed and judgment duly entered.

The judgment is affirmed.

All concur.

---

3. The trial court conducted evidentiary hearings on points concerning charges of ineffective assistance of assisting counsel, intimidation and harassment of defense witnesses, illegal mail censorship, and denial of a change of venue.

4. § 559.010, RSMo 1969 was repealed by Laws 1975, p. ——, House Bill No. 150, which became effective September 28, 1975. A new felony murder statute, what is now § 559.007 RSMo Supp.1975, was enacted. Defendant Weeks was charged and tried before the effective date of the new law.