STATE of Missouri,
Plaintiff–Respondent,

v.

Earl Albert WEEKS,
Defendant–Appellant.

No. 11178.

Missouri Court of Appeals,
Southern District,
Division Four.

June 18, 1980.

Motion for Rehearing and for Transfer
Denied July 11, 1980.

Application to Transfer Denied
Sept. 9, 1980.

John D. Ashcroft, Atty. Gen., Steven W. Garrett, Asst. Atty. Gen., Jefferson City, for plaintiff–respondent.

Michael Baker, Springfield, for defendant–appellant.

BILLINGS, Judge.

This is the second appeal of defendant's conviction for robbery–murder. In his first appeal, *State v. Weeks,* 546 S.W.2d 567 (Mo. App.1977), we reviewed the record for plain error because defendant's motion for new trial was not timely filed. Judgment was affirmed and thereafter, defendant filed a postconviction motion under Supreme Court Rule 27.26, contending, inter alia, ineffective assistance of counsel for failure to timely file the motion for new trial. The

trial court granted defendant's motion as to the failure to file the motion for new trial, overruled the remaining grounds alleged,[1] set aside the sentence and judgment previously entered, and granted defendant leave to file a new motion for a new trial. The latter motion was overruled and defendant again sentenced to life imprisonment. We affirm.

■ One of defendant's points in this appeal questions the sufficiency of the evidence to support the verdict of the jury. Contrary to and in violation of Rule 84.-04(d), V.A.M.R., the point does not advise us in what respect the state's evidence fell short. Nevertheless, we adopt the statement of facts as reported in *State v. Weeks*, supra, and hold the evidence was sufficient.

Defendant's principal point asserts he had ineffective assistance of counsel because one of his attorneys, Richard Franks of Springfield, Missouri, had a conflict of interest by reason of the fact Attorney Franks was also representing a codefendant, Ralph Parcel, while representing defendant. This contention by defendant, raised for the first time in defendant's abortive motion for new trial by his principal attorney, and assigned as error in his second motion for new trial, necessitates an inquiry as to defendant's attorneys and their roles at his trial.

Defendant was arrested at the request of Missouri authorities in Iowa and resisted extradition proceedings to this state. He first employed an Iowa attorney and then engaged the services of Attorney Lawrence Johnson and Associates of Champaign, Illinois. Attorney Johnson represented defendant at the extradition hearing and then entered his appearance for defendant in Greene County, Missouri, at defendant's preliminary hearing.

Ralph Parcel had also been charged in the murder of Mrs. Cukerbaum and because of his indigency, Attorney Franks had been appointed to represent him. At a joint preliminary hearing for defendant and Parcel, Attorney Johnson represented defendant and Attorney Franks represented Parcel. Teitsworth's testimony incriminated both defendant and Parcel. During the course of the preliminary hearing, Attorney Franks, with defendant's knowledge and consent, was employed by Attorney Johnson to serve as local counsel. Franks' duties were to consist of performing such work as directed by Attorney Johnson, handle some of the investigation, prepare and present anticipated motions, and to personally attend defendant's trial.

Defendant and Parcel were bound over to the Circuit Court of Greene County, Missouri, and jointly charged in an information. Various pretrial motions were filed and presented on behalf of both defendants by Attorney Franks, Attorney Hays (associate of Attorney Johnson), and jointly by both Attorney Franks and Attorney Johnson. At defendant's request, his trial was scheduled for an early date. Parcel's motions for a severance and a continuance were granted. Defendant and Parcel were, in the meantime, incarcerated in the Greene County jail.

At defendant's six–day trial, Attorney Johnson, his associate Hays, and Attorney Franks were present. Attorney Johnson, a former Illinois prosecutor and with extensive experience in defending criminal cases, was the lead counsel for defendant. He conducted the voir dire of the jury panel and made the opening statement for the defense. He cross–examined all of the state's witnesses and conducted the direct examination of defendant and all defense witnesses. He made the defense objections throughout the trial and presented the defense views and arguments to the court on matters of evidence and trial procedure, and argued the case to the jury.

Defendant's defense was that he was in Iowa at the time of the robbery–murder. He so testified as did his common–law wife, her father, three of her sisters, one of her

---

1. Defendant lodged an appeal in this court from the portion of the trial court's order overruling the remainder of his Rule 27.26 motion. After due notice, we dismissed the appeal (No. 11306) for failure to perfect the same.

brothers–in–law, and two or more friends of the defendant. Parcel was not subpoenaed or called as a witness by the defense.

Defendant's untimely motion for new trial, prepared and filed by Attorney Johnson, alleged Attorney Franks' representation of Parcel rendered Parcel "unavailable" as a witness for defendant at the latter's trial. In support of this allegation, Attorney Johnson called Parcel to testify at the hearing conducted on the motion. Because the charge was still pending against Parcel, the presiding judge, the Honorable Douglas W. Greene,[2] and Attorney Franks advised the prospective witness of his rights and Attorney Franks made a record that he was advising Parcel not to testify at the hearing and should exercise his right against self–incrimination. Nevertheless, Parcel testified and stated he had been willing to testify in behalf of defendant at the latter's trial; that he had communicated his willingness to both defendant and Attorney Franks and, that he, defendant and Teitsworth (principal state's witness) were not together at any time the weekend of the murder. On cross–examination he admitted his prior criminal felony record and when asked where he was the weekend in question he then invoked his Fifth Amendment right against self–incrimination. He also refused to answer a question whether he and Teitsworth committed the robbery of the Cukerbaum store, but denied he, defendant and Teitsworth committed the robber of the store.[3]

During the foregoing hearing, Attorney Franks testified there had been some general discussion with Attorney Johnson about the possibility of Parcel testifying at de-

fendant's trial. He stated that if he had acquired knowledge Parcel was going to be called as a´ witness for the defendant, he would have advised Parcel not to testify "regardless of whether or not I was employed on this case." Attorney Franks denied any communication to him that defendant desired the testimony of Parcel at defendant's trial and stated there was no request by Attorney Johnson that Parcel be called as a witness in defendant's case.

The state's evidence, including the testimony of witnesses other than Teitsworth, showed defendant, Parcel and Teitsworth were together en route from Iowa to Springfield, in Springfield, and at Carl Kindred's house immediately after the murder. Teitsworth's testimony equally implicated Parcel and defendant in the actual commission of the crime. Attorney Lawrence Johnson's opening statement and jury argument suggested that Burton Dewitt,[4] not defendant, was the third man on the trip from Iowa to Springfield and involved in the killing of Mrs. Cukerbaum.

Parcel was not physically nor legally unavailable as a witness for the defendant. He was in the nearby Greene County jail throughout defendant's trial. He was subject to being subpoenaed as a witness if such had been requested by defendant or his lead counsel, Attorney Johnson. The voluminous trial transcript makes it abundantly clear that Attorney Johnson was completely in charge of the defense of the case. Attorney Franks' dual representation and presence at defendant's trial was no bar to defendant or Attorney Johnson requesting a subpoena for Parcel if they

---

**2.** A member of this court since March 17, 1979 and not participating in this appeal.

**3.** As noted in our prior opinion, Parcel recanted this testimony at his own trial some three months later and placed the primary responsibility for the crime on Weeks. His testimony corroborated Teitsworth's testimony at Weeks' trial as to Weeks' involvement. He explained he had been threatened by Weeks and was afraid of him when he gave the earlier testimony. See *State v. Parcel*, 546 S.W.2d 571 (Mo. App.1977). At a hearing held on defendant's second motion for new trial, Parcel testified his

trial testimony concerning Weeks was false and that he, Teitsworth and Pearson were together the weekend of the murder; that Weeks "wasn't with me at the time the crime supposedly happened."

**4.** Dewitt was shown to be a friend of Teitsworth and Parcel. He was with Parcel when the latter was first arrested by Iowa authorities and was also arrested and charged with the crime. Thereafter, the charge against him was dismissed. At trial Dewitt was called as a witness for the defense but invoked his Fifth Amendment right against self–incrimination.

wanted his testimony. There was no legal way Attorney Franks could have prevented Parcel from testifying if he had been called as a witness. There was no attorney–client relationship existing between Attorney Johnson and Parcel that would have interfered with this attorney's examination. If called as a witness, Parcel was free to waive his constitutional privilege against self–incrimination. His purported testimony would have been merely cumulative to that of defendant and his other alibi witnesses. His credibility as a witness for the defendant would have been seriously questioned by reason of his prior criminal record and the fact he was awaiting trial for the murder. His belated invocation of the Fifth Amendment would not have enhanced his credibility. And, in light of his subsequent recantation, one can only speculate what he might have done if called as a witness.

■ Orderly procedure mandates that any assignment of error made on motion for a new trial and on appeal must be based upon an objection made and reasons assigned in the trial court. *State v. Brookshire*, 353 S.W.2d 681 (Mo.1962), cert. denied 371 U.S. 67, 83 S.Ct. 155, 9 L.Ed.2d 119 (1962). Trial courts should have an opportunity to rule alleged trial errors when they occur. The foregoing rule is equally applicable to claimed violations of constitutional rights which first surface in a defendant's motion for a new trial. *State v. Price*, 422 S.W.2d 286 (Mo.1967).

Here, defendant or his principal attorney, Attorney Lawrence Johnson, made no objection to Attorney Franks continuing to represent Ralph Parcel until *after* the trial. Both were fully aware Attorney Franks was defending Parcel when the decision was made to employ this attorney as local counsel. Throughout a host of pretrial court proceedings and the six–day trial of defendant neither the defendant nor Attorney Johnson voiced any objection or made any suggestion to the experienced trial judge of any claimed conflict of interest by reason of Attorney Franks' dual representation. Defendant's contention would have

us convict the trial court of reversible error solely on the basis of the dual representation by Attorney Franks because, as we have noted, no objection was lodged with the trial court. Further, contrary to defendant's position, the mere possibility of a conflict of interest by an attorney does not warrant the conclusion that the defendant was deprived of his right of counsel.

In *Mason v. State*, 468 S.W.2d 617 (Mo. 1971), an attorney represented jointly charged but separately tried defendants. The test for an attorney's conflict of interest was stated thusly: "The inquiry here must be whether a conflict of interest of counsel . . . actually existed as between his two clients. There must . have been done something by counsel in the trial, or something which was foregone by counsel and lost to appellant, which was detrimental to him and which was advantageous to his codefendant . . . ." 468 S.W.2d at 620.

There was obviously no conflict of interest on the part of lead counsel, Attorney Johnson. It is purely speculative that defendant suffered any detriment and advantage accrued to Parcel by reason of his failure to testify at defendant's trial. The choice of witnesses is a matter of trial strategy and a reasonable conclusion from the trial transcript is that the failure to call Parcel was trial strategy employed by Attorney Johnson. *Burroughs v. State*, 590 S.W.2d 695 (Mo.App.1979).

The United States Supreme Court has considered the matter of multiple representation of codefendants in three cases. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed.2d 680 (1942); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); and in a decision handed down May 12, 1980, *Cuyler v. Sullivan*, —— U.S. ——, 100 S.Ct. 1708, 64 L.Ed.2d 333.

*Glasser* and *Holloway* both involved a single attorney representing two or more defendants at a joint trial and in both instances, over objection, the attorney was required to represent multiple defendants.

In *Cuyler*, two attorneys represented Sullivan and two other defendants, all charged with murder. Sullivan's case was tried first and he was convicted. His codefendants were acquitted at separate trials. No evidence was offered by the defense in Sullivan's trial and one of his codefendants claimed he would have testified to rebut the testimony of a key witness for the prosecution.

After noting that Sullivan or his attorneys did not object to the multiple representation, and no distinction could be drawn between retained and appointed counsel in determining Sixth Amendment rights, the Court said.

"We come at last to Sullivan's claim that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment because his lawyers had a conflict of interest. The claim raises two issues expressly reserved in *Holloway v. Arkansas*, 435 U.S., at 483–484, [98 S.Ct., at 1178.] The first is whether a state trial judge must inquire into the propriety of multiple representation even though no party lodges an objection. The second is whether the mere possibility of a conflict of interest warrants the conclusion that the defendant was deprived of his right of counsel.

\*    \*    \*    \*    \*    \*

"*Holloway* requires state trial courts to investigate timely objections to multiple representation. But nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquires into the propriety of multiple representation in every case. Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. . . . Unless the trial court knows or reasonably should know that a particular conflict

exists, the court need not initiate an inquiry.

"Nothing in the circumstances of this case indicates that the trial court had a duty to inquire whether there was a conflict of interest. The provision of separate trials for Sullivan and his codefendants significantly reduced the potential for a divergence in their interests. No participant in Sullivan's trial ever objected to the multiple representation. . . [C]ounsel's critical decision to rest Sullivan's defense was on its face a reasonable tactical response to the weakness of the circumstantial evidence presented by the prosecutor. . . . [W]e conclude that the Sixth Amendment imposed upon the trial court no affirmative duty to inquire into the propriety of multiple representation.

"*Holloway* reaffirmed that multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest. Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel. Such a presumption would preclude multiple representation even in cases where " '[a] common defense . . . gives strength against a common attack.' " Id., at 482–483, [98 S.Ct., at 1178] quoting *Glasser v. United States*, 315 U.S. 60, 92 [62 S.Ct. 457, 475, 86 L.Ed.2d 680] (1942) (Frankfurter, J., dissenting).

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. In *Glasser v. United States*, for example, the record showed that defense counsel failed to cross-examine a prosecution witness whose testimony linked Glas-

ser with the crime and failed to resist the presentation of arguably inadmissible evidence. The Court found that both omissions resulted from counsel's desire to diminish the jury's perception of a codefendant's guilt. Indeed, the evidence of counsel's "struggle to serve two masters [could not] seriously be doubted." Since this actual conflict of interest impaired Glasser's defense, the Court reversed his conviction.

\*　　\*　　\*　　\*　　\*　　\*

"Glasser established that unconstitutional multiple representation is never harmless error. Once the Court concluded that Glasser's lawyer had an actual conflict of interest, it refused 'to indulge in nice calculations as to the amount of prejudice' attributable to the conflict. The conflict itself demonstrated a denial of '[t]he right to have the effective assistance of counsel.' Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.

"The Court of Appeals granted Sullivan relief because he had shown that the multiple representation in this case involved a possible conflict of interest. We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance. . . ." (citations omitted)

■ Here, the trial court was not obliged, sua sponte, to initiate an inquiry. Parcel's case had been severed. Attorney Johnson was not representing Parcel and the latter was legally available as a witness if defendant or Attorney Johnson desired his testi-

mony. The state's evidence directly and equally implicated defendant and Parcel and it is reasonable to conclude the decision to not call Parcel at defendant's trial was a tactical decision by defendant's principal attorney. No conflict of interest is demonstrated by the record and the point is denied.[5]

Beginning with the charge his trial attorneys were ineffective for failing to exclude witness Pearson's rebuttal testimony for the State, defendant's next "point" fires a salvo of allegations in support of his contention this testimony was inadmissible and resulted in reversible error. We seriously question whether the point as framed comports with the requirements of Rule 84.04, V.A.M.R., but, nevertheless, will undertake to review the same.

■ The State attempted to call Pearson as a witness in its case–in–chief but the defendant objected there had been inadequate disclosure by the prosecution under the rules of discovery. The trial court conducted a hearing and initially excluded Pearson as a witness. However, when Pearson was offered as a rebuttal witness by the State the defendant's lead attorney, Lawrence Johnson, acknowledged he had interviewed the witness and had been furnished all written reports and the criminal record of Pearson. The court reversed its earlier ruling and permitted Pearson to testify. The trial court was empowered under Rule 25.45, V.A.M.R., to "enter such . . . orders as it deems just under the circumstances." We do not find the trial court abused its discretion in permitting this witness to testify.

■ Pearson's testimony regarding a statement made by Parcel that he was going to pick up the defendant for the purpose of "pulling a job" in Springfield, Missouri, was admissible as an exception to the hearsay rule under the coconspirator exception, the State's evidence having demonstrated a conspiracy between Teitsworth, Parcel and the defendant to commit the

**5.** See Appendix for 8th Circuit Court of Appeals and Missouri decisions on the question of

conflict of interest by attorneys representing codefendants.

crime. *Glover v. State*, 528 S.W.2d 507 (Mo.App.1975). The testimony of Teitsworth was direct evidence of the conspiracy. *State v. Baldwin*, 358 S.W.2d 18 (Mo. 1962).

■ This witness' testimony that he had seen Burton Dewitt in Iowa at the time of the crime was not error. The admission of rebuttal evidence is discretionary with the trial court and we do not find an abuse of that discretion. *State v. Kerr*, 548 S.W.2d 295 (Mo.App.1977). Defendant, by cross–examination of State's witnesses, had sought to show Dewitt, not defendant, was the "third man" with Teitsworth and Parcel. Defendant, with knowledge that Dewitt "would probably" invoke his Fifth Amendment privilege against self-incrimination, had this person returned to Missouri and called him as the first witness for the defense. As anticipated by the defendant, Dewitt refused to testify and his refusal could have created a possible inference with the jury that he was the "third man" and guilty of the crime for which defendant was on trial. Pearson's testimony would tend to dispel such an inference. *State v. Wright*, 582 S.W.2d 275 (Mo. banc 1979). Furthermore, the next rebuttal evidence for the State, Tom Kindred, testified without objection that he too had seen Dewitt in Iowa late in the afternoon of the evening of the murder.

■ The State was entitled to argue Pearson's testimony of Parcel's statement because of the conspiracy exception to the hearsay rule, supra. In addition, no objection was made to this argument and to preserve a charge of improper argument for appellate review an objection must be made at the time of such argument. *State v. Hatten*, 561 S.W.2d 706 (Mo.App.1978).

■ Defendant next contends he is entitled to a new trial because his witnesses were threatened, harassed and intimidated before and during trial by officers of the State. A pretrial hearing was held by Judge Greene when the defendant sought a dismissal of the charge or, the alternative, for a protective order, based on these allegations. A second hearing was conducted in connection with defendant's first motion for new trial, and the matter was explored a third time before Judge Bacon at the second motion for new trial hearing. The burden of proving such allegations was on the defendant. *State v. Drake*, 514 S.W.2d 653 (Mo.App.1974). The State's evidence refuted that of the defendant. Where there is a question of credibility, the trial court, sitting as the trier of fact, had the right to determine the conflicts in testimony. *State v. Garrett*, 510 S.W.2d 203 (Mo. App.1974). We defer to the ruling of the trial court.

■ Defendant's point alleging error in the admission of certain photographs and testimony regarding footprints in the snow near and around the scene of the murder is not properly preserved for review. An objection must be lodged during testimony in order to preserve the question for appellate review. *State v. Hoy*, 570 S.W.2d 697 (Mo. App.1978). Regarding demonstrative evidence such as photographs, an objection must be made at the earliest opportunity or the point is deemed waived. *Johnson v. State*, 574 S.W.2d 936 (Mo.App.1978). And, a point advanced on appeal as to the inadmissibility of evidence must be based on the objection as made at trial. *State v. Lang*, 515 S.W.2d 507 (Mo.1974). Five State's witnesses had already testified, without objection, with reference to the footprints found at and near the scene of the crime before the defendant voiced an "improper foundation" objection to the testimony of witness McConnell and to the introduction of certain photographs. The footprints found in the snow corroborated Teitsworth's testimony in certain respects. The admission of the subsequently taken photographs was a discretionary matter for the trial court [*State v. Jackson*, 499 S.W.2d 467 (Mo.1973)] and we think relevant to demonstrate the area described by the witnesses and serve as corroboration of oral testimony. The point is denied.

■ Defendant's final point for consideration charges his trial counsel was ineffective for failing to exclude the "footprint

testimony" by a motion to suppress, timely objection, and offering a cautionary instruction. This contention ignores the fact that the complained of evidence was admissible because it tended to corroborate the testimony of Teitsworth that he let defendant and Parcel out of the car near the Cukerbaum store and picked them up at the Kindred residence. The tracks and footprints in the newly fallen snow indicated that two people had traversed a route from the store to near the Kindred home. This allegation of error is just another example of hindsight by defendant of the trial tactics and strategy of defendant's experienced trial attorney. The point is denied.

The judgment is affirmed.

FLANIGAN, C. J., MAUS and PREWITT, JJ., concur.

GREENE, J., recused.

### APPENDIX

Several cases in the Eighth Circuit have treated the conflict of interest problem as regards criminal defendants.

*Beran v. United States,* 580 F.2d 324 (8th Cir. 1978), cert. denied 440 U.S. 946, 99 S.Ct. 1422, 59 L.Ed.2d 634 (Mere fact that codefendants were represented by same attorney was not a conflict); *United States v. Cox,* 580 F.2d 317 (8th Cir. 1978), cert. denied 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (Alternative finding of no conflict or waiver of conflict where three codefendants were represented by same retained counsel); *United States v. Valenzuela,* 521 F.2d 414 (8th Cir. 1975), cert. denied 424 U.S. 916, 96 S.Ct. 1117, 47 L.Ed.2d 321 (No conflict where codefendants retained the same counsel); *United States v. Swanson,* 509 F.2d 1205 (8th Cir. 1975) (Waiver of conflict where codefendants were represented by the same attorney); *Whitlock v. United States,* 478 F.2d 1087 (8th Cir. 1973) (No conflict on the facts where retained attorney represented codefendants, one of whom had earlier pleaded guilty and briefly turned government informer); *Derringer v. United States,* 441 F.2d 1140 (8th Cir. 1971) (No conflict where codefendants were retained by the same retained counsel); *Larry Buffalo Chief v. State of South Dakota,* 425 F.2d 271 (8th Cir. 1970) (Probable conflict where retained counsel represented codefendants, but court reversed on other grounds); *Peterson v. State of Missouri,* 355 F.Supp. 1371 (W.D.Mo.1973) (No conflict where theft defendant retained same counsel as did burglary defendants in another trial); *Roberts v. United States,* 348 F.Supp. 563 (E.D.Mo.1972), aff'd 477 F.2d 544 (8th Cir. 1973) (No conflict where codefendants retained the same counsel).

Missouri cases include:

*Mooring v. State,* 501 S.W.2d 7 (Mo.1973) (No conflict where attorney represented defendant and two other persons who were potential defendants but were on trial for unrelated crimes); *Booth v. State,* 491 S.W.2d 286 (Mo.1973) (No conflict on the facts where attorney represented codefendants and did not call one codefendant to testify for other codefendant); *Babcock v. State,* 485 S.W.2d 85 (Mo.1972) (Mere fact that codefendants were represented by the same attorneys, standing alone, did not constitute a conflict); *Mason v. State,* 468 S.W.2d 617 (Mo.1971) (No conflict where codefendants jointly charged but separately tried retained the same counsel); *State v. Hamblin,* 448 S.W.2d 603 (Mo.1970) (No conflict from mere fact that defendant's appointed counsel was mayor and supervisor of city police force which was uninvolved in the investigation); *Ciarelli v. State,* 441 S.W.2d 695 (Mo.1969) (Attorney's representation of both defendant and prosecution witness produced a conflict, which was waived by defendant); *State v. Crockett,* 419 S.W.2d 22 (Mo.1967) (Conflict where defendant's appointed attorney was also an assistant attorney general); *LaFrance v. State,* 585 S.W.2d 317 (Mo.App.1979) (Conflict where four codefendants were represented by same appointed counsel and where plea bargain was that charges against three would be dismissed if fourth codefendant pled guilty); *Ballard v. State,* 577 S.W.2d 932 (Mo.App.1979) (No conflict from mere fact that appointed counsel represented husband and wife codefendants);

*Davis v. State*, 573 S.W.2d 736 (Mo.App. 1978) (No conflict from fact that retained counsel represented husband and wife codefendants); *DeConink v. State*, 557 S.W.2d 698 (Mo.App.1977) (Court found alternatively no conflict or waiver of conflict where attorney who represented one defendant later represented another defendant arrested on related charges); *State v. Johnson*, 549 S.W.2d 348 (Mo.App.1977) (No conflict where two attorneys from public defender's office represented, respectively, the defendant and a prosecution witness); *State v. Risinger*, 546 S.W.2d 563 (Mo.App.1977) (Conflict where defendant's attorney, without defendant's knowledge and consent, also represented a convicted codefendant who turned prosecution witness); *State v. Cox*, 539 S.W.2d 684 (Mo.App.1976) (Conflict where defendant's attorney was also counsel for convicted codefendant who was to be prosecution witness).

Also see: Comment, Conflict of Interests in Multiple Representation of Criminal Co-Defendants, 68 J.Crim.L. and Criminology 226–251 (1977); Project: Criminal Procedure, Vol. 68, No. 2, Geo.L.J. 500–504 (1979); Annot., 34 A.L.R.3d 470 (1970).